Arnold v. Talcott.

---

SATTERLEE ARNOLD and ANNA M. ARNOLD, his wife, appellants,

*v.*

JAMES TALCOTT, respondent.

1. In equity, a contract between husband and wife relating to the wife's separate estate is as valid against the husband's creditors as if the wife were a *feme sole*.

2. If a married woman *bona fide* employs her husband to devise and perfect mechanical inventions for her, she agreeing to pay all the expenses to be incurred and also to pay him a salary out of her separate estate, and in pursuance thereof the patents for his inventions are issued to or assigned to the wife, the patents and their proceeds are the separate property of the wife and cannot in equity be reached by the creditors of the husband. *Taylor v. Wands, 10 Dick. Ch. Rep. 491*, reaffirmed.

On appeal from a decree advised by Vice-Chancellor Reed, whose opinion is reported in *Talcott v. Arnold, 9 Dick. Ch. Rep. 570.*

Mr. *Elwood C. Harris* and Mr. *Charles L. Corbin*, for the appellants.

Mr. *John B. Vreeland* and Mr. *Stephen H. Little*, for the respondent.

The opinion of the court was delivered by

DIXON, J.

A general statement of the circumstances of this case may be found in the opinion of the learned vice-chancellor, and need not be here repeated.

A fundamental difference exists between the view taken by the vice-chancellor and that taken by this court regarding the central fact in controversy. We believe (although he did not) in the substantial truth of the testimony of Mr. and Mrs. Arnold concerning their agreement made in 1879. They both testify that then, shortly after Mr. Arnold's assignment for the benefit of his creditors, it was agreed that Mrs. Arnold, out of her own means (being a legacy of $10,000 just before left to her), should furnish all the money required by Mr. Arnold in experimenting for the purpose of devising, developing and perfecting mechanical inventions, and also should pay him a salary of $1,200 per annum, which he was to devote, as far as necessary, to the support of his family; and that, in consideration thereof, Mr. Arnold should employ his skill and labor for the purpose mentioned, and should cause all his inventions and whatever patents might be issued therefor to become the separate property of Mrs Arnold. To this testimony there is no contradiction. It is corroborated by their conduct since the time of the alleged making of the bargain; for no doubt exists that Mrs. Arnold employed almost the whole of her private fortune in the manner stipulated, and all the patents secured for Mr. Arnold's inventions were issued or at once assigned to his wife, and have always been treated as hers.

It is true that, in managing the business which this arrangement contemplated, the husband has not been held to such a strict account, and the wife has not exercised such careful scrutiny as would be looked for if they had been allied in business only, but, considering their close family relationship, this freedom on the one side and confidence on the other militate scarcely at all against the reality and *bona fides* of their business contract.

The contract itself was one likely to be made under the circumstances, for Mr. Arnold's ability to support his family seems to have depended mainly on his inventive skill, and his in-

Arnold *v.* Talcott.

solvency rendered it improbable that he would find any other source than his wife's funds for supplying his pecuniary wants. Nor can any unfairness be charged, at least against Mrs. Arnold. In view of the extreme fallibility of all attempts at mechanical invention, and the actual failure of Mr. Arnold up to that time, it perhaps required the faith of a wife in her husband to subject all one's fortune to the hazard of such an enterprise.

The result of the contract is that seventeen patents stand in Mrs. Arnold's name, of which only two or three seem to have any value; that out of these two or three large sums of money have been received, most of which has, however, been spent. in further experimentation, leaving in her hands at present property worth about $16,000, besides the patents and the contracts made under them.

This being the state of affairs, the question arises whether a court of equity should aid Mr. Arnold's creditor to collect his debt out of Mrs. Arnold's possessions.

The complainant urges that such 'assistance should be given him for three reasons—*first,* because the contract was made with intent to delay, hinder or defraud the husband's creditors; *second,* because the parties were incapable of contracting with each other, and *third,* because a person's agreement to assign, in gross, all his future labors as an inventor, or the products of those labors, is invalid.

On the grounds above stated, we believe the contract to have been made *bona fide* for valuable consideration on both sides, and without any improper design. The inability of husband and wife to contract with each other exists at law only ; in equity, their contract relating to the wife's separate property is as valid as if the wife were a *feme·sole. Perkins* v. *Elliott, 8 C. E. Gr. 526.* The present contract related to Mrs. Arnold's separate estate.

As to the third reason, while the proposition there advanced may be sound (*Aspinwall Company* v. *Gill, 32 Fed. Rep. 697 ; Joliet Manufacturing Co.* v. *Dice, 105 Ill. 649*), yet certainly, after the contract has been fully performed by the actual transfer of the patents obtained upon the inventions and the payment of

the consideration to the inventor, a court of equity cannot be induced to undo the transaction and take back the patents merely because the contract had not been legally enforceable. At that stage the transaction has become simply a completed sale and delivery of personal property for a valuable consideration previously received, and is in all respects unobjectionable.

The present case, as we regard it, falls directly within the principle very recently applied by this court in *Taylor* v. *Wands, 10 Dick. Ch. Rep. 491,* that a married woman may invest her separate estate in any legitimate business, and employ her husband as her agent to carry it on for her, without rendering it or the profits of it liable for her husband's debts; the profits of the investment, produced through the purchased labor and skill of the husband, will, like the capital itself, be the separate property of the wife.

The decree of the court below should be reversed and the bill dismissed.

*For reversal*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, BOGERT, DAYTON, HENDRICKSON, NIXON—12.

*For affirmance*—None.